UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER CARR,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No. 2:25-cv-1759-JDP (SS)<br><br>ORDER |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Benefits Income ("SSI") under Title XVI of the Social Security Act. Both parties now move for summary judgment. *See* ECF Nos. 10 & 13. For the reasons discussed below, the court denies plaintiff's motion and grants the Commissioner's motion.[1]

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th

[1] Both parties have consented to magistrate judge jurisdiction. ECF No. 8.

Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On November 30, 2021, plaintiff filed an application for SSI, alleging disability beginning October 20, 2021. Administrative Record ("AR") 36. After his application was denied both initially and upon reconsideration, plaintiff testified at a hearing before the ALJ on June 14, 2024. *Id*. On June 24, 2024, the ALJ issued a decision, finding that plaintiff was not disabled. AR 36-47. Specifically, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 30, 2021, the application date.

   * * *

2. The claimant has the following severe impairments: right ankle osteoarthritis, obesity, liver cirrhosis, obsessive compulsive disorder, somatic symptom disorder, and anxiety disorder.

   * * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with the following limitations: the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk for 2 hours in an 8-hour workday. The claimant can occasionally use right foot controls. The claimant is unable to climb. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold, wetness, and work hazards, such as dangerous, moving machinery and unprotected heights. The claimant can understand, remember, and apply simple instructions. He can perform simple tasks and adapt to simple changes. He is unable to work with public. He can occasionally interact with supervisors and co-workers.

   * * *

5. The claimant is unable to perform any past relevant work.

   * * *

6. The claimant was born [in 1977] and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is “not disabled,” whether or not the claimant has transferable job skills.

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> * * *
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 30, 2021, the date the application was filed.

AR 38-47 (citations to the code of regulations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-6. He now seeks judicial review under 42 U.S.C. § 405(g).

**Analysis**

Plaintiff claims that the ALJ erred in two ways. First, he argues that the ALJ failed to provide sufficient reasoning to discount certain portions of his symptom testimony. ECF No. 10 at 9-15. Second, plaintiff argues that the ALJ failed to properly evaluate the medical opinions of his treating gastroenterologist, Dr. Benjamin Brichler, the consultative internist, Dr. Muhammed Jawad, and the consultative psychiatrist, Dr. Keith Whitten. *Id.* at 15-21. The court addresses these arguments in turn.

**I. Plaintiff's Testimony**

In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the claimant meets this requirement, and there is no evidence of malingering, the ALJ can reject his symptom testimony only by offering clear and convincing reasons for doing so. *Id.* "This is not an easy requirement to meet: the clear and convincing standard is the most demanding required in Social Security cases." *Id.* The ALJ's reasons must also be supported by substantial evidence in the record. *Thomas*, 278 F.3d at 959.

Plaintiff testified that he broke his right ankle approximately 17 years prior to the hearing and, as a result, that ankle has "no range of motion" and "swells every day," thereby putting plaintiff "in constant pain." AR 65. Plaintiff had not received any medical treatment for his right ankle in the two years prior to the hearing. AR 65-66. Plaintiff testified that he can walk for 5 to 10 minutes before requiring a break, and he cannot stand in one spot for more than 20 to 25 minutes. AR 66. Plaintiff stated that he can lift approximately 25 to 40 pounds. AR 66-67. Further, the plaintiff testified that he had not had a doctor's appointment in approximately eighteen months prior to the hearing. AR 69.

Plaintiff also testified that he has liver cirrhosis, for which he takes a number of medications. AR 67. Plaintiff stated that as a result of his medications, "it's very hard to concentrate" and he experiences dizziness. AR 59. Plaintiff also testified that he has anxiety, depression, and OCD. AR 71. While plaintiff stated that he takes medication for these conditions, he testified that he does not seek additional mental health treatment, such as seeing a psychologist or therapist. AR 70-71. Further, in his functional report, plaintiff reported that he experiences "extreme fatigue" and "exhaustion" that are both "debilitating." AR 256.

In terms of his daily activities, plaintiff testified that he worked up to 15 hours per week "for Domino's delivering pizza."[2] AR 57-58. In addition to delivering pizzas, he also washes dishes, prepares food, and lifts objects. AR 60. Plaintiff also stated that he "keep[s] up with emails," cleans the house, and plays games online. AR 72-73.

In assessing plaintiff's residual functional capacity ("RFC"), the ALJ accounted for many of the limitations described in plaintiff's testimony. However, the ALJ concluded that plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 20. The court addresses these two sources—medical evidence and other evidence—in turn.

[2] Prior to this position, plaintiff testified that he worked part-time as a nursing assistant and package delivery driver. AR 61-63.

First, regarding the medical evidence, the ALJ noted that a January 2022 physical examination revealed normal findings aside from plaintiff's weight. AR 42, 446. The ALJ cited a February 2022 examination that showed normal strength in all extremities. AR 42, 538. The ALJ referenced the March 2022 examination by Dr. Jawad. AR 42, 448-55. As the ALJ noted, while Dr. Jawad found that plaintiff had "mild difficulties" walking and had a limited range of motion in his right ankle, Dr. Jawad nonetheless found the Romberg test was negative and that plaintiff had "5/5 muscle strength in all extremities, normal muscle bulk and tone, normal reflexes, intact sensation, and age-appropriate range of motion in the left lower extremity and bilaterial upper extremities." AR 42-43 (citing 450-53).

Further, the ALJ noted that a March 2022 assessment diagnosed plaintiff with mild liver cirrhosis, and that physicians had recommended that plaintiff undergo a colonoscopy for further assessment. AR 43, 458-59. The ALJ cited a June 2022 assessment in which treating physicians recommended cortisone injections and medication to treat plaintiff's right ankle. AR 43, 698. The ALJ also referenced Dr. Whitten's August 2022 mental status examination, which "revealed irritable attitude, rapid speech, mildly to moderately impaired judgment, and scattered thought processes, but euthymic mood, normal thought content, intact orientation, mostly intact memory, fair concentration, normal fund of knowledge, average intelligence, and intact abstract thinking." AR 43 (citing 707-709).

The ALJ properly concluded that plaintiff's testimony about the severity of his limitations was not supported by his medical records. *See Morgan v. Commissioner*, 169 F.3d 595, 600 (9th Cir. 1999) (holding that inconsistencies or a lack of support from medical records is a proper basis for discounting a claimant's subjective testimony). Plaintiff argues the ALJ provided a "highly selective summary of the medical evidence," but the only omission that plaintiff points out is the June 2022 assessment that the ALJ did discuss. *See* ECF No. 10 at 12-13. Specifically, the ALJ noted that the June 2022 assessment found "definitive joint space narrowing throughout the ankle consistent with posttraumatic arthritis, an obvious osteophyte formation, and subchondral sclerosis throughout the tibiotalar joint." AR 43 (citing AR 697). Moreover, as noted, the ALJ observed that the recommended treatments were cortisone injections and medication. *Id*. (citing

AR 698). While the ALJ did not discuss the treating physician's concerns about the prospect of surgery, the record establishes that the ALJ considered the assessment as a whole. *See id*. Moreover, plaintiff does not explain how this medical opinion—that plaintiff may not fully recover with surgery—conflicts with the ALJ's decision. The ALJ properly focused on the inconsistencies between the findings set forth above and plaintiff's testimony, concluding that such inconsistencies constituted a clear and convincing reason to reject plaintiff's testimony regarding the severity of his limitations. *See Morgan*, 169 F.3d at 600.

Moreover, after providing this overview of plaintiff's medical history, the ALJ concluded that plaintiff's allegations "are inconsistent with treatment history." AR 43. Specifically, the ALJ found that "records reflected minimal treatment during the period at issue and no treatment after 2022." *Id*. The ALJ considered alternative explanations for plaintiff's minimal treatment, such as mental health limitations and cost, but the ALJ concluded that "such rationale was not substantiated by significant evidence of record." *Id*.

The ALJ did not err in making this finding. Indeed, at the hearing in June 2024, plaintiff testified that he had not had a doctor's appointment in approximately the preceding eighteen months, and he had not received any medical treatment for his right ankle in the preceding two years. *See* AR 65-66, 69. While the treating physician from June 2022 recommended that plaintiff receive cortisone injections and other medication, there is no evidence that plaintiff continued receiving such treatment after this visit. *See* AR 698. Because plaintiff did not provide a good reason for not seeking further treatment, the ALJ properly found that plaintiff's allegations were undermined by his lack of treatment. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("The ALJ did not err in concluding that such ongoing conservative treatment and overall improvement are inconsistent with [the plaintiff's] testimony as to the severity of her impairments."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting [the plaintiff's] credibility where the claimant has a good reason for not seeking more aggressive treatment.").

Second, the ALJ discussed other evidence that was inconsistent with plaintiff's testimony. The ALJ found that the record "reflected evidence of extensive work activity during the period at issue," and while plaintiff's earning "did not meet statutory presumptive levels for substantial gainful activity, the work activity suggests [plaintiff] maintains significant physical and mental capabilities." AR 43. The ALJ also noted that plaintiff had expressed his capabilities in "caring for his daughter, driving a car, leaving the house alone, preparing meals, completing household chores, shopping in stores, using a computer, managing funds, reading, and watching sporting events." *Id*.

The ALJ properly concluded that this evidence contradicted plaintiff's testimony about the severity of his limitations. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Plaintiff argues that the ALJ erred by considering plaintiff's part-time work, but he presents no binding authority supporting that assertion. *See* ECF No. 10 at 14-15. Moreover, plaintiff's citations to district court cases are readily distinguishable because plaintiff here has engaged in a relatively significant amount of work without any documented need for accommodations. *Cf. Carol F. v. Saul*, No. 19-cv-7040-SP, 2021 WL 1200041, at *7 (C.D. Cal. Mar. 30, 2021) (finding that a part-time job with accommodations was not inconsistent with the plaintiff's "alleged inability to sustain full-time work"); *Kovalenko v. Comm'r of Soc. Sec.*, No. 2:18-cv-1038-DMC, 2019 WL 3714567, at *11 (E.D. Cal. Aug. 7, 2019) (holding that "the mere fact that [the plaintiff] worked part-time, without more, is not a clear and convincing reason to disregard her testimony").

Lastly, plaintiff identifies other statements from his testimony that he argues would have supported the ALJ finding that he has a disability. ECF No. 10 at 14. However, the court's inquiry "is not whether there is substantial evidence that could support a finding of disability[,]" which seems to be plaintiff's main argument in hopes that the court reweighs the evidence in his favor; rather, the focus is "whether there is substantial evidence to support the Commissioner's

actual finding." *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Because there is substantial evidence supporting the ALJ's finding, and the ALJ showed clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his limitations, the decision must be upheld. *See id.*; *Trevizo*, 871 F.3d at 678.

**II. Medical Opinions**

Under the Commissioner's revised regulations, treating physicians' opinions are no longer entitled to the deference that they enjoyed under the prior regulations' "hierarchy of medical opinions." *See Woods v. Kijakazi*, 32 F.4th 785, 787, 792 (9th Cir. 2022). Consequently, an ALJ is no longer required to provide "specific and legitimate" reasons for rejecting a treating opinion. *Id*. Instead, the ALJ must evaluate each medical opinion's persuasiveness based on: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). While all factors must be considered, "supportability" and "consistency" are the primary considerations. *Id*. § 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92. "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787. However, the ALJ is still required to "provide a coherent explanation of her reasoning" so that judicial review may be effective. *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, *3 (E.D. Cal. Sep. 13, 2022) (quoting *Hardy v. Comm'r Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

Plaintiff challenges the ALJ's assessment of the opinions of Dr. Brichler, Dr. Jawad, and Dr. Whitten. First, plaintiff argues that the ALJ erred by failing to account for the opinion of his treating gastroenterologist, Dr. Brichler. ECF No. 10 at 15-17. In February 2021, Dr. Brichler opined that:

> [Plaintiff] is under my care for cirrhosis of the liver. He is on multiple medications related to complications from cirrhosis. He experiences significant fatigue related to his cirrhosis and to side effects from medications. He is unable to maintain full-time or part-time employment due to his medical condition.

AR 533.

As plaintiff points out, the ALJ did not discuss Dr. Brichler's opinion. *See* AR 20-21. Regarding Dr. Brichler's opinion that plaintiff "experiences significant fatigue" from his medications, the ALJ made the same finding, and thus the ALJ's failure to address Dr. Brichler's opinion as to fatigue was harmless because it was "inconsequential to the ultimate nondisability determination." *See* AR 533; AR 45 ("I restricted the claimant to simple tasks due to evidence of severe anxiety and fatigue."); *Stout*, 454 F.3d at 1055 (holding that an error is harmless where it "was inconsequential to the ultimate nondisability determination").

As for Dr. Brichler's opinion that plaintiff is unable to maintain employment, the ALJ was not required to consider such opinion because it provided a statement on an issue "reserved to the Commissioner." 20 C.F.R. § 416.920b(c)(3)). Federal regulations provide that the Social Security Administration is "responsible for making the determination or decision about whether [an individual is] disabled" and, consequently, the ALJ "will not provide any analysis" about a statement that an individual is or is not "disabled, blind, able to work, or able to perform regular or continuing work."[3] 20 C.F.R. § 416.920b(c)(3)(i). As such, the ALJ was not required to address Dr. Brichler's opinion that plaintiff is "unable to maintain full-time or part-time employment due to his medical condition." *See* AR 533. Accordingly, the ALJ did not commit harmful error by failing to address Dr. Brichler's opinion.

---

[3] Prior to the adoption of these revised regulations in 2017, the Court of Appeals held that the assessment of disability is reserved to the Commissioner, not a treating physician. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity. . . . The law reserves the disability determination to the Commissioner.").

Second, plaintiff argues that the ALJ "failed to explain his departure from the examining medical source opinion of the consultative internist," Dr. Jawad. ECF No. 10 at 17-19. Dr. Jawad opined that plaintiff could lift and carry 35 pounds frequently and 45 pounds infrequently, push and pull with limitations, stand and walk 2 to 3 hours in a 8-hour day with "frequent breaks," and remain seated for 4 hours in an 8-hour day with "frequent breaks."[4] AR 454. The ALJ agreed with these limitations except as to Dr. Jawad's opinion that plaintiff could only sit for 4 hours in an 8-hour day and that plaintiff required "frequent breaks." Specifically, the ALJ found that:

> [t]he remainder of Dr. Jawad's opinion, including sitting limitations, postural limitations, and additional environmental limitations are not persuasive. They are not supported by ample evidence. For example, there is no significant evidence to suggest [plaintiff] is unable to sit more than 4 hours in an 8-hour workday. In fact, records reflected minimal complaints relative to sitting and [plaintiff] has been capable of extensive daily activities during the period at issue. Further, examinations revealed largely intact muscle strength, intact sensation, intact reflexes, and negative Romberg testing, findings that are inconsistent with extreme postural and sitting limitations.

AR 44 (citations to the administrative record omitted). Accordingly, the ALJ did not err by departing from Dr. Jawad's opinion as to plaintiff's ability to sit or his need for breaks.

Lastly, plaintiff argues that the ALJ "failed to properly evaluate the examining medical source opinion of the consultative psychiatrist," Dr. Whitten. ECF No. 10 at 19-21. Dr. Whitten opined that plaintiff's "mental health issues . . . would have a moderate impact on his ability to work reliably and consistently." AR 709. Specifically, Dr. Whitten found that plaintiff's "ability to perform simple and repetitive tasks would be unimpaired," his "ability to perform detailed and complex tasks would be mildly impaired," his "ability to accept and understand instructions from supervisors would be mildly to moderately impaired," his "ability to interact with coworkers and the public would be moderately impaired," his "ability to perform work activities on a consistent basis without special supervision would be mildly to moderately impaired," and his "ability to

[4] Dr. Jawad did not specify the frequency or duration of such breaks.

maintain regular attendance and complete a normal work week without interruption from his psychiatric symptoms would be moderately impaired." AR 708-09.

On account of these findings, the ALJ included the following language in plaintiff's RFC: "[plaintiff] can understand, remember, and apply simple instructions. He can perform simple tasks and adapt to simple changes. He is unable to work with public. He can occasionally interact with supervisors and co-workers." *See* AR 41. Plaintiff argues that the ALJ erred by not including "any work restrictions in the RFC to account for attendance problems or workplace interruptions, such as periodic workplace absences or time off-task while at work." ECF No. 10 at 20. However, the ALJ noted that any further restrictions were unsupported by the record, which showed that plaintiff engaged in work without such restrictions while delivering pizzas, did not receive "focused mental health treatment," and his "initial application did not allege a psychiatrist impairment." *See* AR 45. Accordingly, the ALJ did not err by declining to include additional limitations in plaintiff's RFC.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 10, is DENIED.

2. The Commissioner's motion for summary judgment, ECF No. 13, is GRANTED.

3. The Clerk of Court is directed to enter judgment in the Commissioner's favor and close this case.

IT IS SO ORDERED.

Dated: August 24, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE